**In re Richard C. MUNCIE, Sharon E. Muncie, Debtors.**

**Bankruptcy No. 99–50937.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

July 7, 1999.

William A. Semons, Lasky & Semons, Columbus, OH, for debtors.

Mark J. Pitstick, Washington C.H., OH, for E–Z Cash Advance.

Elizabeth H. Doucet, Columbus, OH, for Chapter 7 Trustee.

### OPINION AND ORDER FINDING E–Z CASH ADVANCE IN CIVIL CONTEMPT

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the motion of the debtors, Richard C. Muncie

and Sharon E. Muncie, for an order finding E–Z Cash Advance in contempt for its willful violation of the automatic stay. E–Z Cash Advance moved to dismiss the debtors' motion and requested sanctions. The Court heard the matter on June 8, 1999.

Each of the debtors testified at the hearing. E–Z Cash Advance presented the testimony of its owner, John D. Adkins, as well as that of Patrolman Thompson, a Washington C.H. police officer. The evidence also included several exhibits which were admitted without objection.

Based on the evidence presented, the Court makes the following factual findings:

1. The debtors borrowed money from E–Z Cash Advance on two occasions in January 1999. In both instances, one or the other signed checks made payable to E–Z Cash Advance for the agreed-upon amounts to be repaid. The exhibits reflect only one of the transactions which occurred on January 19, 1999. Payment of this loan was due on February 1, 1999.

2. When the debtors failed to repay the loans when they became due, E–Z Cash Advance deposited the check into its account. The checks were subsequently returned unpaid with the notation that debtors' account had been closed.

3. Sharon E. Muncie contacted E–Z Cash Advance by telephone on February 1, 1999, informing an unnamed employee that she and her husband were unable to repay the loans, that it was their intent to file bankruptcy, and that their checking account had been closed. John D. Adkins denies that the employee advised him of this telephone conversation.

4. On February 8, 1999, the debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. E–Z Cash Advance was among the creditors listed on the debtors' schedules. On February 13, 1999, a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines was mailed to E–Z Cash Advance at its place of business. John D.

Adkins claimed he did not open this piece of mail until after he had contacted the Washington C.H. police.

5. On February 23, 1999, John D. Adkins, on behalf of E–Z Cash Advance, caused criminal complaints to be filed against the debtors for check fraud despite the fact that his business does not require that any money be in the borrower's checking account at the time of the loan. The criminal complaints were filed for the purpose of collecting the prepetition debt from the debtors.

6. The debtors were arrested on March 26, 1999, pursuant to the criminal complaints and were released on their own recognizance. The debtors appeared before the Washington C.H. Municipal Court on March 29, 1999, at which time the prosecutor failed to appear, and on June 4, 1999, when the prosecutor, Mark J. Pitstick, who is also E–Z Cash Advance's attorney, agreed to recuse himself. At the time of the contempt hearing, the debtors were scheduled to make yet another court appearance on the criminal charges.

7. The debtors filed their motion for contempt on March 29, 1999. The Court entered a show cause order on March 31, 1999, which was served on E–Z Cash Advance on that same date. The show cause order and the debtors' motion, which was served March 26, 1999, apprised E–Z Cash Advance of the time and place of the hearing and the essential facts constituting the alleged contempt. By agreement of the parties, the hearing was continued to a different date to enable E–Z Cash Advance to prepare its defense.

8. Following the filing of the debtors' contempt motion, John D. Adkins on behalf of E–Z Cash Advance consented to a dismissal of the criminal charges provided "everything would go away."

9. The debtors have suffered actual damages, including their attorney's fees, for the criminal matter and this contempt proceeding. Other items of actual damage include lost wages and travel expenses ne-

cessitated by court appearances and visits to their attorney's office.

The Court also adopts the following legal conclusions:

1. The filing of the debtors' bankruptcy petition operated as a stay of the commencement or continuation of an action against them for the recovery of a prepetition debt. *See* 11 U.S.C. § 362(a)(1).

2. Because E–Z Cash Advance initiated the criminal proceeding for the purpose of collecting a debt, the exception from the automatic stay pertaining to the commencement or continuation of a criminal action or proceeding against the debtors does not apply. *See In re Lake*, 11 B.R. 202, 204 (Bankr.S.D.Ohio 1981); *St. Joseph Wholesale Liquor Co. v. Butler (Matter of Butler)*, 74 B.R. 106, 107 (W.D.Mo.1985); *Padgett v. Latham (In re Padgett)*, 37 B.R. 280, 283–4 (Bankr. W.D.Ky.1983). The conclusion that the criminal proceeding was but a guise for a collection effort is buttressed by the fact that E–Z Cash Advance's attorney was assigned to prosecute the charges before his withdrawal and by the fact that the charges would be dropped if the debtors dismissed their contempt action against E–Z Cash Advance.

3. In light of the conclusion that this exception does not apply, E–Z Cash Advance's actions undertaken with respect to the commencement and continuation of the criminal proceedings against the debtors violated the automatic stay.

4. This Court has statutory power under 28 U.S.C. § 1481, 11 U.S.C. § 105(a) and Bankruptcy Rule 9020 to enter a finding of civil contempt and to award actual damages for violations of the automatic stay. *The Elder–Beerman Stores Corp. v. Thomasville Furniture Indus. Inc. (In re The Elder–Beerman Stores Corp.)*, 197 B.R. 629, 632 (Bankr.S.D.Ohio 1996); *Utah State Credit Union v. Skinner (In re Skinner)*, 90 B.R. 470, 479 (D.Utah 1988), *aff'd sub.nom. Mountain America Credit Union v. Skinner*, 917 F.2d 444 (10th Cir. 1990).

5. E–Z Cash Advance was armed with sufficient facts at the time it initiated the criminal proceeding to give it at least constructive knowledge of the debtors' bankruptcy filing and of the automatic stay. *See Thacker v. Etter (Matter of Thacker)*, 24 B.R. 835, 838 (Bankr. S.D.Ohio 1982). E–Z Cash Advance may not evade such knowledge by failing to open for one week the mail containing the notice of commencement of the debtors' bankruptcy case. *See Skinner*, 90 B.R. at 479–80.

6. In light of these conclusions, the debtors have met their burden of showing by clear and convincing evidence that E–Z Cash Advance violated a definite and specific order of the Court, i.e. the automatic stay. *See Elder–Beerman*, 197 B.R. at 633.

Based on the foregoing findings of fact and conclusions of law, it is ORDERED that E–Z Cash Advance is found to be in civil contempt of this Court and shall pay to the debtors their actual damages. The debtors and their attorney shall within fourteen (14) days of the service of this order serve upon counsel for E–Z Cash Advance and file with the Court affidavits evidencing these damages. The Court **DENIES** E–Z Cash Advance's motion to dismiss and request for sanctions. E–Z Cash Advance may purge itself of this finding of civil contempt by immediately taking all steps in its power to terminate the criminal proceedings against the debtors and by payment of the debtors' actual damages.

This order shall become final within ten (10) days after service and shall have the same force and effect as a contempt order entered by a district judge, unless, within this ten-day period, E–Z Cash Advance serves and files objections prepared in the

manner provided by Bankruptcy Rule 9033(b).

**IT IS SO ORDERED.**